UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

KENNETH KELLY,

                           Plaintiff,

       -against-

THE CITY OF NEW YORK, P.O. JOSE
RIVERA [SHIELD # 24278], P.O. MICHAEL
O'CONNER [SHIELD # 3085], SERGEANT
MARC MANARA [TAX REG. # 924120],
SERGEANT STEVE FLORES [TAX REG. #
924382], SERGEANT DAVID JOHNSON
[TAX REG. # 928548],and JOHN DOE
AND JANE DOE,

                          Defendants.
-------------------------------------------------------------------X

Case No. 13 CV 3874 (GBD)

**AMENDED COMPLAINT**

JURY DEMAND

RECEIVED
OCT - 7 2013
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, KENNETH KELLY, by his attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, P.O. Jose Rivera [Shield # 24278], P.O. Michael O'Conner [Shield # 3085], Sergeant Marc Manara [Tax Reg. # 924120], Sergeant Steve Flores [Tax Reg. # 924382], Sergeant David Johnson [Tax Reg. # 928548], John Doe and Jane Doe (collectively, "defendants"), respectfully alleges as follows:

NATURE OF THE ACTION

1.      This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the First, Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First,

Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

3.     As the deprivation of rights complained of herein occurred within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

COMPLIANCE WITH N.Y. GEN. MUN. LAW REQUIREMENTS

4.     Plaintiff timely made and served a notice of claim upon the defendants in compliance with N.Y. Gen. Mun. Law § 50-e.

5.     At least thirty days have elapsed since the service of aforesaid notice of claim and adjustment or payment thereof has been neglected or refused.

6.     This action is commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) is based.

THE PARTIES

7.     Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

8.     At all relevant times, defendants P.O. Jose Rivera [Shield # 24278], P.O. Michael O'Conner [Shield # 3085], Sergeant Marc Manara [Tax Reg. # 924120], Sergeant Steve Flores [Tax Reg. # 924382], Sergeant David Johnson [Tax Reg. # 928548] and John Doe and Jane Doe (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

9.     At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

10.     At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom,

2

practice, usage, regulation and/or at the direction of the defendant City of New York.

11.     Plaintiff is suing the defendant officers in their individual and official capacities.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.     On or about October 7, 2010, at approximately 6:20 p.m., defendant officers, acting in concert, arrested plaintiff without cause at or within the vicinity of 800 East 180th Street, Bronx, New York, and charged plaintiff with PL 140.15 'Criminal trespass in the second degree', among other charges.

13.     Plaintiff, however, did not enter or remain unlawfully in any dwelling, and did not commit any offense against the laws of New York City and/or State for which the arrest may be lawfully made.

14.     Prior to the arrest, plaintiff and his wife and four children were driving home when he stopped over at the aforesaid arrest location to see his friend, Fred Hall, whom he was having trouble reaching by telephone.

15.     Plaintiff who was driving his family at the time parked the vehicle at the corner of East 180th Street and Mapes Avenue, Bronx, New York, and asked his family to wait for him indicating that he would be right back.

16.     Upon entering the aforesaid arrest location, plaintiff decided to take the stairs as the elevator was crowded.

17.     As plaintiff made his way to the staircase and stepped on the first flight of stairs, he realized that defendant officers were behind him.

18.     Plaintiff stepped aside, leaning against the wall, to make way for defendant officers who seemed to be in hot pursuit of some other individuals.

19.     After making their way past the plaintiff, defendant officers suddenly turned around and grabbed the plaintiff.

20.     Plaintiff was then slammed against the wall and immediately handcuffed with his hands placed behind his back.

21.     The defendant police officers then subjected plaintiff to an illegal search.

22.     Even though defendant officers did not find anything illegal, defendant officers nonetheless arrested plaintiff.

3

23.     At some point, defendant officers asked the plaintiff whether he resided at the arrest location -- 800 East 180th Street, Bronx, New York.

24.     When plaintiff answered in the negative, defendant officers indicated that the plaintiff was arrested for trespassing.

25.     Plaintiff at that point informed defendant officers that he was visiting his friend and requested defendant officers to take him to his friend's apartment and/or check with his friend to confirm his status.

26.     The defendant officers however refused to check with plaintiff's friend and did not verify plaintiff's status.

27.     After falsely arresting the innocent plaintiff, defendant officers transported plaintiff to the NYPD-48th Precinct.

28.     The defendant officers denied plaintiff's entreaties to see and/or contact his wife and children, who were in the vehicle waiting for him, and inform them that he had been arrested.

29.     Upon arrival at the precinct, defendant officers took the plaintiff straight to a bathroom where the plaintiff, under threat of physical force and harm, was further subjected by defendant officers to strip/body cavity searches in the presence and clear view of other individuals who were present at the time.

30.     The aforesaid strip/body cavity search was illegal because defendant officers lacked reasonable suspicion to believe that the plaintiff was in possession of contraband, weapons, and/or a means of escape.

31.     Even though defendant officers did not find anything illegal from their multiple strip/body cavity searches, defendant officers nonetheless insisted that the plaintiff was hiding drugs in his butt.

32.     The defendant officers further threatened the plaintiff with physical force and harm insisting that the plaintiff should either voluntarily give them what "is in [his] f*****g a**" or they will get would get it out of his "a** by force".

33.     As plaintiff did not have anything in his system, plaintiff duly informed defendant officers.

34.     The defendant officers then led the plaintiff into a crowded cell and directed the plaintiff to lie down on his back.

35.     Plaintiff promptly complied and laid down on the floor on his back as he was directed.

36.     The defendant officers then handcuffed plaintiff's left arm and raised his right arm approximately three (3) feet up from the ground and handcuffed his right arm to an object that is approximately three (3) feet high.

37.     Of the approximately ten (10) prisoners or detainees in the cell at the time, plaintiff was the only individual who was handcuffed.

38.     Aside from the fact that the plaintiff was the only prisoner or detainee in the cell who was handcuffed, plaintiff was handcuffed upside down leaving him completely defenseless from any assault or attack from any individual.

39.     When the plaintiff complained that his wrists were hurting him and requested the defendant officers to remove the handcuffs, defendant officers refused and indicated that they would not remove the handcuffs until plaintiff gave them "what is in [his] f*****g a**".

40.     Additionally, when plaintiff requested food and water, and requested to contact his wife and family, defendant officers refused and indicated that they would not provide plaintiff with food and water nor allow him to speak with his wife and family until such time the plaintiff gave them "what is in [his] f*****g a**".

41.     Plaintiff remained in the aforesaid position for several hours.

42.     Eventually, after detaining plaintiff at the precinct for a lengthy period of time, defendant officers transported the plaintiff to the hospital involuntarily.

43.     While at the hospital, defendant officers informed the emergency room physicians that the plaintiff has drugs or narcotics "in [his] f*****g a**".

44.     The defendant officers proceeded to put on hand gloves and requested the physicians to give the plaintiff something to cause him to move his bowels so they could get "what is in [plaintiff's] f*****g a**".

45.     Because plaintiff did not have anything in his system, the emergency room physicians refused to administer any medications that could cause the plaintiff to move his bowels.

46.     As the plaintiff was dehydrated and was cold and shivering from the handcuffing, assault and treatment received at the hand of defendant officers, the emergency room physicians, with defendant officers loudly voicing their objection, administered saline to the plaintiff and covered the plaintiff with a blanket.

47.     Eventually, plaintiff was discharged from the hospital.

48.     Upon his discharge, defendant officers transported plaintiff back to the NYPD-48th Precinct.

49.     Upon arrival at the precinct, defendant officers returned the plaintiff back to the cell.

50.     As he was handcuffed prior to the trip to the hospital, defendant officers handcuffed plaintiff's left arm and raised his right arm approximately three (3) feet up from the ground and handcuffed the right arm to the object that is approximately three (3) feet high from the ground.

51.     Plaintiff remained in the aforesaid position for several more hours.

52.     While at the precinct, defendant officers repeatedly harassed and taunted the plaintiff, calling and addressing the plaintiff as the "a** man".

53.     After detaining the plaintiff for a lengthy period of time at the NYPD-48th Precinct, plaintiff was transported to the Central Booking to await arraignment.

54.     While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by the Bronx County District Attorney's Office.

55.     During this meeting, defendant officers falsely stated to the prosecutors, among other things, that plaintiff entered or remained unlawfully in a dwelling.

56.     Based on the false testimony of defendant officers, a prosecution was commenced against plaintiff.

57.     Upon arraignment, plaintiff was released on his own recognizance but was required to return to the criminal court to defend the false charges levied against him.

58.     On or about March 14, 2012, the false charges levied against plaintiff were summarily dismissed.

59.     At the time of the arrest, defendant officers seized and/or appropriated to themselves several of plaintiff's items or personal belongings, including but not limited to approximately three hundred sixty five dollars and zero cents ($365.00) that the plaintiff had in his pocket at the time, and have refused to return aforesaid items to plaintiff.

60.     Plaintiff who was employed as a taxi driver at the time of the arrest eventually lost his job because of the arrest and false charges levied against him by defendants.

61.     Plaintiff who was working towards his Hack license at the time of the arrest, has been unable to obtain a Hack license, remains unemployed and/or underemployed and has missed several opportunities to secure gainful employment because of the arrest and false charges levied against him by defendants.

62.     That each and every officer who responded to and/or was present at the location of the arrest and/or at the precinct or facility knew and was fully aware that the plaintiffs did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

63.     Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

64.     As a result of the aforesaid actions by defendant officers, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, financial losses, and damage to reputation.

FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

65.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 64 of this complaint as though fully set forth herein.

66.     The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, malicious abuse of process, failure to intervene, deliberate indifference, poor conditions of confinement, cruel and inhuman treatment, cruel and unusual punishment, subjection to a strip/body cavity search, illegal and unreasonable stop, frisk, search and seizure, racial profiling, selective enforcement, loss of rights to familial association, pattern of harassment, denial of freedom of speech, first amendment retaliation, abuse of authority, unlawful entry, unlawful taking of private property, conspiracy, discrimination, fabrication of evidence, denial of equal protection of the laws, denial of right to a fair trial, denial of due process rights and malicious prosecution.

67.     Such conduct violated plaintiff's rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

68.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

69.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 68 of this complaint as though fully set forth herein.

70.     Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

71.     Additionally, defendant City of New York, acting through District Attorney
        Robert T. Johnson and the Office of the District Attorney of the Bronx
        County, had actual and/or de facto policies, practices, customs and/or usages
        of failing to properly train, supervise, and discipline its Assistant District
        Attorneys and employees concerning correct practices in conducting
        investigations, interviewing witnesses and informants, assessing the
        credibility of witnesses and informants, the initiation and/or prosecution of
        criminal actions, obligation not to promote or condone perjury and/or assist
        in the prosecution of innocent persons and the duty and/or obligation of
        candor toward the court.

72.     Defendant City of New York, acting through aforesaid NYPD and District
        Attorney, had actual and/or de facto policies, practices, customs and/or
        usages of wrongfully arresting, illegally stopping, frisking, searching,
        seizing, abusing, humiliating, degrading and/or maliciously prosecuting
        individuals who are members of racial/ethnic minority groups such as
        plaintiff, who is black, on the pretext that they were involved in narcotics,
        drugs, guns and/or other illicit activities.

73.     Further, the existence of the aforesaid unconstitutional policies, practices,
        customs and/or usages may be inferred from repeated occurrences of similar
        wrongful conduct.

74.     For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422
        (S.D.N.Y. 2011), the Southern District of New York observed that the City
        of New York had been accused of racial profiling on multiple occasions and
        that it had settled at least one of the lawsuits brought against it concerning
        racial profiling.

75.     In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at
        *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New
        York, acting through the NYPD, engages in illegal and unreasonable stop,
        frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699,
        2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

76.     Additionally, NYPD Police Officer Michael Carsey was recently convicted
        of felonies for lying under oath and falsifying information while applying for
        a search warrant.

77.     Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier
        admitted to fabricating facts to justify searching vehicles and homes for
        cocaine, marijuana and guns, filing false information to obtain search
        warrants and performing illegal searches of vehicles and homes. That
        Sergeant Eiseman admitted to perjury and fabricating evidence against
        innocent persons that he falsely arrested and charged with possession of
        narcotics and/or illegal drugs, and also admitted to training numerous young
        police officers to commit similar crimes and/or offenses.

78.     In addition, in or about October 2011, Detective Stephen Anderson testified
        against Detective Jason Arbeeny, a veteran of the NYPD. That Detective
        Anderson testified that, among other things, it is a common practice within
        the NYPD to plant narcotics and/or illegal drugs -- commonly known within
        the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas.
        Detective Anderson referred to the practice of planting narcotics and/or
        illegal drugs on innocent persons as "attaching bodies" to the narcotics
        and/or illegal drugs. According to Detective Anderson, this practice "was
        something I was seeing a lot of, whether it was from supervisors or
        undercovers and even investigators."

79.     Regarding the issue of arrest quotas, Detective Anderson confirmed that the
        NYPD requires officers to fill quotas, and testified that even as a detective
        "you still have a number [of arrests] to reach while you are in the narcotics
        division."

80.     Recently, a jury determined that officers of the NYPD are permitted, as a
        policy and/or practice, to fill their arrest quotas by making unlawful arrests.
        *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of
        Kings Feb. 18, 2011).

81.     Prior to his testimony, Detective Anderson and his partner provided false
        testimony in court claiming that they purchased cocaine from certain

10

individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

82.     That Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

83.     That the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

84.     Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

85.     In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin

Spellman, Sergeant Bobby Hadid and Police Officer Admir Kacamakovic --
have recently been convicted of various similar crimes as those described
herein including but not limited to falsifying police reports, perjury,
corruption, robbery, gun running, drug dealing, prostitution, theft and
assault. Former NYPD Commissioner Bernard Kerik was also recently
convicted of corruption and similar crimes as those described herein.

86.     In addition to the named individual defendants, several officers of the NYPD
assigned to the NYPD-48th Precinct -- as the named individual defendants --
routinely make unlawful arrests charging innocent persons with various
crimes and/or offenses.

87.     That most of the arrests and charges made by officers assigned to the NYPD-
48th Precinct are usually voided and/or dismissed by prosecutors for lack of
evidence.

88.     That defendant City of New York has settled numerous lawsuits brought in
this district against several officers assigned to the NYPD-48th Precinct in
connection with the unlawful arrests and charges described herein.

89.     That defendant City of New York maintained the above described policies,
practices, customs or usages knowing fully well that the policies, practices,
customs or usages lead to improper conduct by its police officers and
employees. In failing to take any corrective actions, defendant City of New
York acted with deliberate indifference, and its failure was a direct and
proximate cause of plaintiff's injuries as described herein.

90.     The actions of defendants, acting under color of State law, deprived plaintiff
of his due process rights, and rights, remedies, privileges, and immunities
under the laws and Constitution of the United States, treatise, ordinances,
customary international law and norms, custom and usage of a right; in
particular, the right to be secure in his person and property, to be free from
abuse of process, the excessive use of force and the right to due process.

91.     By these actions, defendants have deprived plaintiff of rights secured by
treatise, ordinances, customary international law and norms, custom and
usage of a right, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth

Amendments to the United States Constitution, in violation of 42 U.S.C. §
1983.

THIRD CAUSE OF ACTION: 42 U.S.C. § 1985

92.     By this reference, plaintiff incorporates each and every allegation and
        averment set forth in paragraphs 1 through 91 of this complaint as though
        fully set forth herein.

93.     In an effort to find fault to use against the plaintiff, defendant officers
        conspired among themselves and conspired with other individuals to deprive
        plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the
        First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to United
        States Constitution, because of his race, ancestry and/or ethnicity, and took
        numerous overt steps in furtherance of such conspiracy, as set forth above.

94.     In light of the foregoing therefore, defendant officers engaged in a
        conspiracy designed to deprive plaintiff of his constitutional and federal
        rights in violation of 42 U.S.C. § 1985.

95.     As a direct and proximate result of the misconduct and abuse of authority
        detailed above, plaintiff sustained the damages hereinbefore stated.

FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I,
§§ 5, 6, 7, 8, 11 & 12

96.     By this reference, plaintiff incorporates each and every allegation and
        averment set forth in paragraphs 1 through 95 of this complaint as though
        fully set forth herein.

97.     By reason of the foregoing, and by arresting, detaining and imprisoning
        plaintiff without probable cause or reasonable suspicion, and harassing and
        assaulting him and depriving him of due process and equal protection of
        laws, defendants deprived plaintiff of rights, remedies, privileges, and
        immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting
        cruel and unusual punishments), Article 1, § 6 (providing for due process),
        Article 1, § 7 (prohibiting the taking of private property), Article 1, § 8
        (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination
        in civil rights and providing for equal protection of laws) & Article I, § 12

(prohibiting unreasonable searches & seizures) of the New York Constitution.

98.     In addition, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 7, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

99.     Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 7, 8, 11 & 12 of the New York Constitution.

100.    Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiff's state constitutional rights.

FIFTH CAUSE OF ACTION: ASSAULT AND BATTERY

101.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 100 of this complaint as though fully set forth herein.

102.    The conduct of defendant officers, as described herein, amounted to assault and battery.

103.    By reason of and as a consequence of the assault, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, and damage to reputation.

104.    Upon information and belief, defendant City of New York had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City of New York failed to take any appropriate actions to assure plaintiff's safety and security and failed to protect and/or safeguard plaintiff's interests.

105.    That defendant City of New York's failure to assure plaintiff's safety and security was a proximate cause of plaintiff's injuries.

SIXTH CAUSE OF ACTION: OTHER NEW YORK TORTS

106.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 105 of this complaint as though fully set forth herein.

107.    The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, illegal and unreasonable stop, frisk, search and seizure, negligence, defamation, conspiracy, special injury, loss of consortium, malicious abuse of process, harassment, tortuous interference, abuse of power, fraud, unjust enrichment, trespass and malicious prosecution.

108.    Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTH CAUSE OF ACTION: NEGLIGENT & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

109.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 108 of this complaint as though fully set forth herein.

110.    The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to plaintiff.

111.    Plaintiff's emotional distress has damaged his personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the assault, strip search, detention and imprisonment by defendants.

112.    Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

EIGHTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES

113.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 112 of this complaint as though fully set forth herein.

114.     Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

115.     Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to plaintiff or to those in a like situation would probably result from such conduct described herein.

116.     Upon information and belief, defendant City of New York, knew or should have known through the exercise of reasonable diligence that defendant officers were not prudent and were potentially dangerous.

117.     Upon information and belief, defendant City of New York's negligence in hiring and retaining the defendants proximately caused plaintiff's injuries.

118.     Upon information and belief, because of defendant City of New York's negligent hiring and retention of defendant officers, plaintiff incurred and sustained significant and lasting injuries.

WHEREFORE, plaintiff respectfully prays judgment as follows:

a.      For compensatory damages against all defendants in an amount to be proven at trial;

b.      For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c.      For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

d.      For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
        October 7, 2013

UGO UZOH, P.C.

By:    Ugochukwu Uzoh (UU-9076)
       Attorney for the Plaintiff
       304 Livingston Street, Suite 2R
       Brooklyn, N.Y. 11217
       Tel. No: (718) 874-6045
       Fax No: (718) 576-2685
       Email: u.ugochukwu@yahoo.com